United States District Court
Southern District of Texas
**ENTERED**
February 27, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GREGORY DIXON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-20-2393 |
| | § | |
| GOVERNOR GREG ABBOTT, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 against Texas Governor Greg Abbott ("Abbott"), Texas Department of Criminal Justice ("TDCJ") current and former officials Bryan Collier, Lorie Davis, Bobby Lumpkin, and Warden Robert Herrera (the "TDCJ Officials"), and the University of Texas Medical Branch at Galveston ("UTMB"). Defendants filed a motion to dismiss, and served plaintiff a copy of the motion at his address of record on March 14, 2022. (Docket Entry No. 25.) To-date, plaintiff has failed to respond to the motion and the motion is unopposed.

Having considered the motion, the pleadings, the record, and the applicable law, the Court **GRANTS** the motion to dismiss and **DISMISSES** this lawsuit for the reasons explained below.

**I. BACKGROUND AND CLAIMS**

In his complaint (Docket Entry No. 1) and more definite statement (Docket Entry No. 20), plaintiff contends that the defendants were deliberately indifferent to his health and

safety by failing to protect him from exposure to COVID-19 at the Pack Unit in 2020. He claims he tested "positive" on May 25, 2020, and that his "sense of smell is not the same." (Docket Entry No. 20, p. 3.) Plaintiff pleads no factual allegations showing that he sustained any physical injuries from the positive test result other than his sense of smell not being the same, nor does he identify any health care provider who diagnosed him as having a clinical COVID-19 infection. He does not claim to have developed any clinical signs and symptoms of an active infection, such as fever, coughing, shortness of breath, headache, chills, or muscle pain. (Docket Entry No. 1-1.)

Plaintiff claims that the defendants were deliberately indifferent to his health and safety because they were "caught off guard" by the COVID-19 virus, failed to take action in early 2020, and "fail[ed] to provide [him] a COVID-19 free facility." (Docket Entry No. 1, p. 6.) He further contends that the defendants should have created policies and protocols in advance of COVID-19 to guard against potential future pandemics. Plaintiff seeks monetary damages in an amount of $2.5 million and permanent injunctive relief in the form of "new policy [sic] to address anything as [sic] this pandemic ever happening again in TDCJ," and to "have a panel put in place to review all of the failures of these defendants and address all of the mistakes which were made during this outbreak within the Pack Unit and TDCJ." He further seeks "lifelong medical care." (Docket Entry No. 1, p. 7.) Plaintiff sues the TDCJ Officials in their official and individual capacities.

In their motion to dismiss, the defendants argue that plaintiff's claims are barred by sovereign immunity and res judicata, and that plaintiff fails to raise a viable claim for relief under section 1983.[1] As noted above, plaintiff has not opposed the motion to dismiss.

## II. LEGAL STANDARDS

### A. FRCP 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1) challenges a federal court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

If a FRCP 12(b)(1) motion is filed in conjunction with a FRCP 12(b)(6) motion, a court is to consider the jurisdictional attack under FRCP 12(b)(1) before addressing any attack on the legal merits under FRCP 12(b)(6). *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. FRCP 12(b)(6)

A party may seek dismissal of a claim under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "Under the 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiff must

---

[1] The defendants also argue that plaintiff's claims for monetary damages are precluded by the Court's class action order in *Valentine v. Collier*, 2020 WL 3491999, at *12 (S.D. Tex. June 27, 2020). Because the defendants are entitled to dismissal of this lawsuit on other grounds, this argument need not be addressed.

allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). "Pleadings" for purposes of a FRCP 12(b)(6) motion include the complaint, its attachments, and documents that are referred to in the complaint and central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (cleaned up). That is, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The courts will not strain to find inferences favorable to plaintiff or accept conclusory allegations, unwarranted deductions, or legal conclusions. *Southland Sec. Corp. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 351 (5th Cir. 2004).

## III.  ANALYSIS

A.  Official Capacity Claims

As correctly argued by the defendants, plaintiff's claims for monetary damages against the individual defendants in their official capacities are barred by sovereign immunity under the Eleventh Amendment. A claim against a state employee in his or her official capacity is a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting section 1983. *NiGen*, 804 F.3d at 394.

Plaintiff's claims for monetary damages against the individual defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE** under FRCP 12(b)(1) for lack of jurisdiction as barred by sovereign immunity. *See Otis v. TDCJ*, 812 F. App'x 274, 274 (5th Cir. July 17, 2020).

B.  Defendant Abbott

To the extent plaintiff seeks monetary damages against Abbott in his individual capacity, plaintiff pleads no factual allegations showing that Abbott had any personal

involvement in the incidents giving rise to plaintiff's claims in this lawsuit. Contrary to plaintiff's assertions, it was not defendant Abbott's duty, nor any defendant's duty, to guarantee that the prison system remained entirely free of the COVID-19 virus or that plaintiff would have no exposure to the virus while incarcerated at the Pack Unit. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, *even if the harm ultimately was not averted*.") (emphasis added).

Plaintiff's individual capacity claims against Abbott are **DISMISSED WITH PREJUDICE** under FRCP 12(b)(6) for failure to state a viable section 1983 claim.

C. Defendant UTMB

Plaintiff seeks monetary damages against UTMB for its failure to prevent plaintiff's positive COVID-19 test result and in failing "to give me anything concerning my sense of smell." (Docket Entries No. 1, p. 3; No. 20, p. 4.)

As a component institution of the University of Texas System, UTMB receives the same sovereign immunity protections as the State of Texas. TEX. EDUC. CODE ANN. § 65.02(a)(8). Consequently, plaintiff's claims for monetary damages against UTMB are barred by sovereign immunity under the Eleventh Amendment.

Plaintiff's claims against UTMB for monetary damages are **DISMISSED WITHOUT PREJUDICE** under FRCP 12(b)(1) for lack of jurisdiction as barred by sovereign immunity.

D. <u>Deliberate Indifference</u>

To plead an Eighth Amendment violation based on conditions of confinement, a prisoner must allege conditions that posed a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The prisoner must also allege that the defendant prison officials were deliberately indifferent to his health or safety. *Id.* A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference is an "extremely high standard" to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Allegations of negligence do not state a claim under 42 U.S.C. § 1983.

Plaintiff alleges in this lawsuit that the TDCJ Officials were deliberately indifferent to his health and safety in their inadequate and slow response to the virus at the Pack Unit in early 2020.² This lawsuit is not the first time the undersigned district court judge has been called upon to consider the constitutionality of TDCJ's policy and protocol responses to the COVID-19 virus at the Pack Unit. In *Valentine v. Collier*, C.A. No. 20-CV-1115 (S.D. Tex.), the undersigned judge found that TDCJ's early 2020 policies and protocols regarding the COVID-19 virus were constitutionally inadequate, and entered a preliminary injunction

---

²Plaintiff filed two letters with the Court, complaining of events that occurred after he filed this lawsuit. (Docket Entries No. 22, 23.) Because these letters can be liberally construed as supplemental complaints for which plaintiff did not seek and obtain leave to file, the letters are **ORDERED STRICKEN FROM THE RECORD.**

7

on April 16, 2020, setting out specific actions to be implemented at the Pack Unit for prisoner health and safety. However, the United States Court of Appeals for the Fifth Circuit vacated the preliminary injunction on June 5, 2020. Following a lengthy bench trial in July 2020, the undersigned judge again found TDCJ's policies and protocols constitutionally inadequate, and entered a permanent injunction spelling out actions to be taken at the Pack Unit to protect prisoners from the COVID-19 virus. On March 26, 2021, the Fifth Circuit reversed the permanent injunction and rendered judgment that prison officials were not deliberately indifferent to the health and safety needs of prisoners at the Pack Unit. *Valentine v. Collier*, 993 F.3d 270 (5th Cir. 2021).

In reversing the undersigned judge's rulings, the Fifth Circuit Court of Appeals found that TDCJ had enacted a comprehensive, facility-wide policy on March 20, 2020, which largely tracked the CDC's recommendations, and that the policy was frequently updated and revised. *Id.* at 278. After considering the evidence regarding the promulgation of the policy for responding to COVID-19 and the subsequent revisions to the policy, the Fifth Circuit found that the evidence did not support a finding that prison officials were deliberately indifferent in adopting the policy. *Id.* at 284, 288. The Fifth Circuit concluded that injunctive relief was not warranted because the evidence did not show that the defendants were deliberately indifferent to the health and safety of Pack Unit prisoners in their promulgation and implementation of the policy. *Id.* at 288–89.

The undersigned judge has long been of the opinion that TDCJ's policy responses to the COVID-19 virus at the Pack Unit in 2020 were unconstitutionally deficient. But the Fifth Circuit has determined otherwise. *Id.* To the extent plaintiff contends that the defendants were deliberately indifferent to prisoner health and safety by failing to develop an adequate and comprehensive policy for addressing the COVID-19 virus at the Pack Unit in early 2020, the Fifth Circuit rejected the argument in *Valentine*:

> First, the state granted the CMHCC,[3] the agency with healthcare expertise, rather than Defendants, the primary responsibility for developing policies for all aspects of healthcare in correctional facilities and the duty to advise TDCJ on healthcare. The policy was a facility-wide response to the virus crafted by healthcare experts who had this responsibility under state law. Second, the policy went into effect on March 20, 2020, when knowledge about the virus was unclear and weeks before the first case of COVID-19 was identified in the Pack Unit.

*Valentine*, 993 F.3d at 283 (footnotes omitted). The Fifth Circuit further ruled against any fault-finding as to Pack Unit officials' failures to implement their own unit-wide policies:

> We do not fault prison officials for failing to add another layer of administration. Prison personnel have a military style chain of command and are expected to follow prison policies. Adding another layer to this scheme amounts to impermissible micromanagement of state prisons. Defendants responded to the virus with a prison-wide policy and relied on their staff to follow the policy. This was not unreasonable.

*Id.*, at 284.

The claims raised by plaintiff in this lawsuit track the complaints raised by the plaintiffs in *Valentine*, and cover the same operative time frame. Indeed, as stated earlier,

---

The Correctional Managed Health Care Committee, or CMHCC, is composed of representatives from TDCJ, Texas Tech, and UTMB. *See Valentine*, 993 F.3d at 278.

plaintiff was a member of the plaintiffs' class action in *Valentine*; therefore, the plaintiffs' claims in *Valentine* were effectively his own claims. The issue whether TDCJ and Pack Unit officials were deliberately indifferent in their initial responses to the COVID-19 virus in 2020 was resolved in favor of the officials in *Valentine*, and plaintiff's claims here are barred by res judicata.

Plaintiff in the instant lawsuit also faults the defendants for not creating policies or plans to address possible pandemics at the Pack Unit *before* COVID-19 had been recognized as an infectious agent. His argument fails to raise a viable claim for deliberate indifference. To demonstrate deliberate indifference as to a possible unknown future pandemic, plaintiff here must plead facts showing that the defendants knew of and disregarded an excessive risk to plaintiff's health and safety as to an unknown future pandemic, that they were aware of facts from which the inference could be drawn as to a serious risk of harm, and that they drew such inference. Deliberate indifference is a "state of mind" equivalent to "recklessly disregarding" a known and substantial risk. *Farmer*, 511 U.S. at 835–36. Plaintiff pleads no factual allegations sufficient to support such a claim. By arguing that defendants should have taken steps in 2019 or earlier to avert a possible pandemic, plaintiff falls well short of showing that the defendants recklessly disregarded a known and substantial risk of a pandemic. Plaintiff's allegations are firmly grounded in hindsight, and neither the Eighth Amendment nor this Court holds prison officials to a standard of prognostication.

The defendants are entitled to dismissal of plaintiff's claims for deliberate indifference, and the claims are **DISMISSED WITH PREJUDICE** under FRCP 12(b)(6).

E. <u>Supervisory Liability</u>

Although unclear, plaintiff appears to argue that the TDCJ Officials are liable because they were "supervisors." (Docket Entry No. 1, p. 6.)

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). A supervisory official is not liable for the acts of his subordinates unless: (1) he affirmatively participated in an act that caused a constitutional deprivation, or (2) he implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992). A plaintiff must plead factual allegations sufficient to show either personal involvement or implementation of a causative unconstitutional policy to render a supervisor responsible under section 1983. *See Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006) ("There is no vicarious or respondeat superior liability of supervisors under section 1983").

To any extent plaintiff claims that the TDCJ Officials are liable in this lawsuit because they were "supervisors," no viable claim is raised. He makes no claim that these individuals were liable for the acts of their subordinates in that the individuals either personally participated in the alleged unconstitutional acts or implemented an unconstitutional policy that resulted in injury to plaintiff.

11

The defendants are entitled to dismissal of plaintiff's claims against the TDCJ Officials for supervisory liability, and the claims are **DISMISSED WITH PREJUDICE** under FRCP 12(b)(6) for failure to state a viable claim for relief.

F. Injunctive Relief

Plaintiff requests permanent injunctive relief in the form of "new policy" to prevent any future pandemics at TDCJ, and to appoint a panel to review all of the failures and mistakes made during the COVID-19 outbreak. (Docket Entry No. 1, p. 7.) He also seeks lifelong medical care.

A party seeking a permanent injunction must show: (1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest. *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006).

Plaintiff has not succeeded on the merits of his claims and does not meet his burden of proof under *VRC LLL*. His request for permanent injunctive relief is **DENIED**.

## IV. CONCLUSION

The defendants' motion to dismiss (Docket Entry No. 25) is **GRANTED**. Plaintiff's claims for monetary damages against the defendants in their official capacities and against UTMB are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's remaining claims are

**DISMISSED WITH PREJUDICE.** Any and all pending motions are **DISMISSED AS MOOT.**

Signed at Houston, Texas, on this the 27th day of February, 2023.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE